# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MATRIX SERVICE COMPANY, ) | Case No. 13-CV-584-GKF-PJC |
| a Delaware corporation; and ) | |
| MATRIX SERVICE, INC., ) | |
| an Oklahoma corporation, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment [Dkt. #32] filed by defendants Matrix Service Company ("MSC") and Matrix Service, Inc. ("MSI").

Plaintiff Brandon Cooper ("Cooper"), a former employee of MSI, filed suit in Tulsa County District Court, asserting claims under the Family and Medical Leave Act ("FMLA"); the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); Oklahoma's Protection of Labor Act ("OPLA"), Okla. Stat. tit. 40, §§ 165.1, *et seq.*; the Oklahoma Supreme Court's decision in *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989); and breach of contract. Defendants removed the case to federal court on the basis of federal question jurisdiction.

During briefing on the motion, Cooper filed an Unopposed Motion to Amend Plaintiff's Response to Defendants' Summary Judgment and Plaintiff's Affidavit. [Dkt. #40]. In the motion, Cooper explained that his original affidavit erroneously stated his employment ended in September, when it actually ended in July. [*Id.*, ¶3]. Likewise, Cooper's responses to

defendants' undisputed fact numbers 10 and 16 contained the same errors. [*Id.*, ¶7]. Cooper sought, and the court granted leave, to correct these errors by filing an amended response. [Dkt. #40, p. 5; Dkt. #41]. The amended response corrected the errors. [*See* Dkt. #42].

In defendants' motion, MSC asserted it was not a proper party because Cooper's claims arise out of his employment with MSI, which is a wholly-owned subsidiary of MSC. MSC contends it should be dismissed from the suit. [Dkt. #32, pp. 10-11]. In his response, Cooper concedes that MSC is not a proper party and moves for MSC's dismissal. Upon the agreement of the parties, the court hereby dismisses MSC as a party defendant.

MSI seeks summary judgment on all of Cooper's claims. For the reasons stated below, the court concludes that MSI is entitled to summary judgment on some of Cooper's claims, but not on others.

## I. Uncontested Material Facts

MSI is a wholly-owned subsidiary of Matrix Service Company ("MSC"). [Dkt. ##5-6, Corporate Disclosure Statements]. MSI hired Cooper as a welder on or about August 25, 2008. [Dkt. #32, Ex. B, Employee Action Sheet]. In his job Cooper traveled with a crew to different jobsites, including jobsites in Cushing, Oklahoma; Port Arthur, Texas; Davenport, Iowa; and Superior, Wisconsin. [*Id.*, Ex. A, Cooper Dep., 24:22-28:24].

Throughout Cooper's employment, MSI maintained an Employee Handbook, which included an Employment At-Will Policy and a Payroll Administration Policy. Cooper signed statements acknowledging receipt of the Employee Handbook. [*Id.*, Ex. A, Cooper Dep., 23:1-24:21; Exs. C-D]. The Payroll Administration Policy states:

> To be considered for the payment of any and all bonuses paid by the Company (i.e., production bonuses, incentive compensation, etc.), an employee must be employed with the Company on the day bonuses are paid, regardless of when they have been earned, and have satisfactory job performance. Employees who are

voluntarily or involuntarily terminated prior to the payment of bonuses shall forfeit all bonuses.

[*Id.*, Ex. E, p. 5].

According to John Owen, a Construction Manager for MSI, MSI traditionally provides bonuses to field employees in the form of a safety incentive bonus and a production incentive bonus from each job. [*Id.*, Ex. F, Owen Affid., ¶4]. There is no guarantee of these bonuses and no details about the bonuses are provided to the non-supervisory field employees. [*Id.*].[1] The safety incentive bonus is generally paid shortly after the completion of the job. The production incentive bonus is generally paid later. [*Id.*].

From approximately December of 2010 to December of 2011, Cooper worked on a project to build five petroleum storage tanks in Superior, Wisconsin; Jameson Peschel was his foreman. [*Id.*, Ex. A, Cooper Dep., 27:20-28:1; Ex. H, Westmoreland Dep., 18:21-19:5; Ex. G, Peschel Dep., 5:4-6:5].[2] Kenneth Westmoreland ("Westmoreland") was also a foreman working on the Superior job at that time. [*Id.*, Ex. A, Cooper Dep., 39:11-23; Ex. G, Peschel Dep., 23:18-24:1; Ex. H, Westmoreland Dep., Ex. H, 11:12-16].

When the Superior job was completed, the crew on which Cooper and Peschel worked was moved to Cushing, Oklahoma. [*Id.*, Ex. A, Cooper Dep., 28:2-6].

Cooper received a safety incentive bonus for the Superior job, which was paid shortly after completion of the project. [*Id.*, Ex. A, Cooper Dep., 71:23-72:4]. However, the production bonus was delayed by more than six months. According to Owen, MSI had been awarded the

---

[1] Cooper testified that although he never received any documents explaining how bonuses were calculated and/or stating that he was entitled to the bonus, he had heard it was based off the amount of hours worked on a job, the extent to which the job was completed ahead of schedule and the amount of money saved on consumables. [Dkt. #32, Ex. A, Cooper Dep, 29:18-30:9].

[2] Cooper testified that the Superior project took place from approximately December 2009 to December 2010, but Kenneth Westmoreland, his supervisor during part of the Superior project, testified that project spanned December 2010 to December 2011. [Ex. H, Westmoreland Dep., 18:21-19:5]. Cooper did not contest MSI's Statement of Fact #6, which set the period at December 2010 to December 2011.

Superior project pursuant to an "Alliance Agreement" with Enbridge Pipeline ("Enbridge"). [*Id.*, Ex. F, Owen Affid., ¶5]. Owen testified that the contract documents for the Superior project did not impose any obligation on Enbridge to compensate MSI for the payment of a production incentive bonus to non-supervisory employees. After the project was completed, Owen participated in negotiations with Enbridge to include the production incentive bonus to non-supervisory employees. [*Id.*, ¶6]. As a result of the delay in negotiating with Enbridge, the production incentive bonuses for field employees on the Superior job were not paid out until the summer of 2012. [*See id.*, ¶7]. Owen testified that "[a]s per MSI policy, any employees who were on the Superior, Wisconsin job but were not employed by MSI when the production incentive bonuses were paid did not receive the production incentive bonus." [*Id.*, ¶9].

The parties dispute whether Cooper was employed at the time the production incentive bonus was paid. At the hearing on the instant motion, counsel for MSI explained that MSI cut the checks for the production incentive bonus on Friday, July 13, 2014, including a check for Cooper. Counsel for MSI further explained that MSI then transferred the checks to MSI's facility at the Port of Catoosa for a final review to make sure all recipients were still employed at MSI before distributing the checks to employees. The record contains no evidence showing when this additional review was completed or when the checks were handed to individual employees. Various MSI employees have different memories of when the bonus was paid, ranging from July to September, 2012. [*See* Dkt. #42, Ex. B, Peschel Dep., 11:10-15; Ex. C, Traffic Collision Report; Ex. A, Cooper Affid. at 1; Dkt. #32, Ex. H, Westmoreland Dep., 20:-5-8].

The parties also dispute when and how Cooper's employment with MSI ended. MSI contends the separation occurred on Monday, July 16, 2012, the date listed on an Employee

4

Action Sheet indicating Cooper had quit his job. [Dkt. #32, Ex. I, Employee Action Sheet]. The Employee Action Sheet states Cooper "Resigned-No Reason Given" on that date. [*Id.*]. Cooper contends, however, that the Employee Action Sheet was completed sometime after July 16, 2012, and backdated to make it appear that he had resigned on that date. The Employee Action Sheet bears Westmoreland's signature, dated July 24, 2012. [*Id.*].

Cooper testified that he had finished a job on July 5, had put in for two weeks off and had been told that was okay. [*Id.*, Ex. A, Cooper Dep., 36:1-4]. According to Cooper, he called Westmoreland on July 16, and told him "I need another week off to . . . take care of some stuff . . . ." [*Id.*, 36:4-6]. Cooper said that Westmoreland, "just told me to give him a call when I was ready to go back to work." [*Id.*, 36:8-9].

On or about July 19, 2012, Cooper contacted Westmoreland, who was by then the Operations Scheduling Coordinator for MSI in the office, and told Westmoreland he had had a motorcycle accident and would be off for a while to recover. [Dkt. #32, Ex. A, Cooper Dep., 36:11-15; Ex. H, Westmoreland Dep., 5:13-21; 22:3-24:7].[3] According to Cooper, Westmoreland told him he could come back to work when he had a doctor's release, and talked about putting Cooper in the shop or in Cushing, Oklahoma, because Cooper had talked to him on both the 16th and 19th about staying local until he could "[take] care of everything." [*Id.*, Ex. A, Cooper Dep., 36:11-22].

During his deposition, Cooper testified that approximately a week and a half to two weeks after the July 19 phone conversation, he drove to the shop at the Port of Catoosa and talked to Westmoreland, because Westmoreland would not return his phone calls. [*Id.*, 42:2-

---

[3] Cooper contends Westmoreland's statements confirm that, as of July 19, 2012, Westmoreland still considered him an employee. [*See* Dkt. #32, Ex. H, Westmoreland Dep., 22:3-24:7]. In addition, he asserts Westmoreland "gave him every reason in the world to believe that Plaintiff was still employed on 7/19/12," including telling Cooper how to apply for short term disability benefits. [Dkt. #42 at ¶12; Ex. D, Westmoreland Dep., 24:5-15].

43:3]. In his affidavit, Cooper states that the meeting occurred sometime between July 26, 2012, when he tried unsuccessfully to call Westmoreland, and the end of July. [Dkt. #42, Ex. A, Cooper Affid. at 1].

Cooper testified in his deposition that during the meeting, he asked Westmoreland about "going back to work," and Westmoreland told him "whenever I got a doctor's release, he'd put me back to work" and "at that time is when he told me he terminated me." [Dkt. #32, Ex. A, Cooper Dep., 43:9-16]. Cooper testified that Westmoreland told him "that he thought I quit because I had asked for another week off." [*Id.*, 44:4-12].

In his deposition, Cooper also testified:

Q: Can you tell me how you feel Matrix violated the Family Medical Leave Act?

A: Basically that I was wrongfully terminated.

Q: Why do you feel you were terminated?

A: So I didn't get paid a bonus.

Q: Do you think there was any other reason that you think your employment was terminated?

A: Not really.

[*Id.*, 57: 9-17].

However, in his affidavit, Cooper states that Westmoreland "told me that he terminated me because I couldn't work due to being injured in the accident and because I said I wanted to work locally in Tulsa." [Dkt. #42, Ex. A, Cooper Affid. at 1].[4]

Cooper admitted he never obtained or provided to MSI a release to return to work. [Dkt. #32, Ex. A, Cooper Dep., 44:13-18]. He also testified he never requested any FMLA leave. [*Id.*, 57:18-19]. However, he states in his affidavit, "I assumed I was on FMLA leave when I told

---

[4] Westmoreland testified that during that meeting he told Cooper it looked like the crew would be going to "Midkiff, Texas." [Dkt. #32, Ex. H, Westmoreland Dep. 22:12-14].

Westmoreland the day after my accident that I could not work." [Dkt. #42, Ex. A, Cooper Affid. at 1].

On July 31, 2012, MSI's third party administrator, PayFlex Systems USA, Inc., sent a COBRA notice to Cooper at his last known address, 15760 N. 92nd West Avenue in Skiatook, OK 74070. [*See* Dkt. #32, Ex. K]. Counsel for MSI stated at the hearing on the instant motion that the notice was sent via first-class mail. There are no known records indicating the COBRA letter was returned to MSI or to its third party COBRA administrator. [*Id.*, Ex. L].

## II. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670 (citations omitted). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Id.* at 252.

### III. Analysis

### A. FMLA

Cooper asserts MSI unlawfully discharged him from his employment when he had a qualified injury under the FMLA. [Dkt. #2, Ex. 1, Petition, ¶12]. The FMLA provides an eligible employee with "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is unlawful for employers covered by the FMLA "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1). Further, it is unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2).

Accordingly, courts recognize two theories for recovery under the FMLA: the "interference theory" and the "retaliation theory." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). Cooper asserts both. [*See* Dkt. #42, pp. 10, 12].

8

To prevail on an FMLA interference claim, an employee must demonstrate: (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citation omitted). A deprivation of FMLA rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden shifting analysis does not apply. *Id.* at 1226-27.

Evaluating the evidence in the light most favorable to Cooper, he has presented evidence establishing the first two elements of his claim of FMLA interference—that he was entitled to FMLA leave and that his termination[5] interfered with his right to take FMLA leave. MSI asserts, however, that Cooper has failed to establish the third element, because Cooper testified he was terminated so that MSI would not have to pay him the production incentive bonus.

In an interference claim, the relationship between the termination and the exercise of the employee's FMLA rights can be established by showing that those two events occurred close in time to each other. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012). Cooper's separation from MSI occurred during a series of conversations between Cooper and his boss at the time, Kenneth Westmoreland. Cooper and Westmoreland appear to have discussed Cooper's employment status on July 16, 2012. Cooper was in a motorcycle accident two days later on July 18th, and notified Westmoreland of his injury on the 19th. Westmoreland completed the Employee Action Sheet terminating Cooper's employment with MSI on July 24th, claiming Cooper had resigned on the 16th. Cooper was notified of his separation two days later when he visited Westmoreland in person on July 26th. Westmoreland and Cooper have different

---

[5] MSI maintains that Cooper resigned and was not terminated. For summary judgment purposes, there is sufficient evidence that Cooper was terminated.

9

memories of their conversations that resulted in the latter's separation from MSI. Still, in both retellings, Cooper told Westmoreland of his injury and need for additional leave close in time to his separation from MSI. Cooper's statement that MSI fired him solely to keep him from receiving the production incentive bonus does not preclude a causal relationship between Cooper's leave request following the motorcycle accident and his termination shortly thereafter. Cooper may not have understood MSI's motives.

There remain genuine issues of material fact, specifically, the temporal and causal relationships between Cooper's report of his injury, his request for leave, Westmoreland's decision to complete the Employee Action Sheet on Cooper, and the nature of Cooper's separation from MSI. A rational trier of fact potentially could find that MSI's termination of Cooper was related to his request for leave. Summary judgment is not appropriate on the FMLA interference claim.

Cooper also asserts an FMLA retaliation claim. *McDonnell Douglas* burden shifting analysis applies to FMLA retaliation claims. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). The court concludes Cooper has established the three elements of a *prima facie* retaliation claim. First, Cooper has shown he engaged in protected activity, seeking leave to recover from the injuries he suffered in the motorcycle accident. *See id*. Specifically, Cooper gave MSI notice of his injury "as soon as practicable under the . . . circumstances," in fact within twenty-four hours of the accident. *See* 29 C.F.R. § 825.303(a). Cooper notified Westmoreland that he had "been hospitalized overnight" and that his injuries "render[ed him,] unable to perform the functions of [his] job." *See* 29 C.F.R. § 825.303(b). Cooper correctly argues it is irrelevant that he did not mention the FMLA in his conversations with Westmoreland. *See id*. ("When an employee seeks leave for the first time for a FMLA-

10

qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA"); *see also Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) ("An employee need not expressly assert rights under the FMLA or even mention the FMLA."). Second, Cooper has shown that MSI, in terminating him, took an action that a reasonable employee would find to be materially adverse. *See id*. Third, Cooper must show a causal connection between his efforts to engage in protected activity and MSI's adverse action. *See id*. The "causal connection" element in Cooper's retaliation claim depends on the resolution of the same factual questions that relate to his interference claim. Because a rational trier of fact could resolve those questions in Cooper's favor, for purposes of summary judgment, Cooper has established the "causal connection" required to complete his *prima facie* case.

The burden then shifts to MSI to demonstrate a legitimate, nondiscriminatory reason for its termination decision. MSI maintains that Cooper resigned, and accordingly, has not attempted to explain why Cooper would have been terminated in the absence of his request for leave. Accordingly, MSI is not entitled to summary judgment on Cooper's FMLA claim.

## B. COBRA

The Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161, *et seq.* ("COBRA"), requires employers to provide employees an opportunity to elect continuation of coverage under a group health plan if a qualifying event occurs. 29 U.S.C. § 1161(a). Once a qualifying event occurs, the employer must notify the plan administrator within 30 days of the qualifying event, and the administrator must then notify "any qualified beneficiary" of his COBRA rights within 14 days of the date on which the administrator is notified of the qualifying event. 29 U.S.C. § 1166. Termination of employment, whether voluntary or involuntary, is considered a qualifying event. 29 U.S.C. § 1163(2).

COBRA contains no specific requirements as to the manner in which notice must be given. However, the Tenth Circuit has found that a "good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997) (citations omitted). "The vast majority of courts adopting this 'good faith' standard share the view that COBRA compliance does not require proof that the former employee actually received notice." *Daneshvar v. Graphic Technology, Inc.*, 40 F.Supp.2d 1225, 1242 (D.Kan. 1998) (listing numerous cases). Courts in the Tenth Circuit have found that an employers' notice is sufficient when they send COBRA notices to an employee's last known address. *See Somers v. Cudd Energy Services, Inc.*, 2012 WL 1836269, at *11 (W.D. Okla. May 21, 2012); *Austin v. Jostens, Inc.*, 2008 WL 4642277, at *13 & n.90 (D.Kan. Oct. 16, 2008); *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1334 (D. Utah 1992).

The record establishes that MSI's third party administrator mailed a COBRA notice to Cooper at his last known address on July 31, 2012, and that the mailing was not returned. The court concludes that MSI satisfied the notice requirements of 29 U.S.C. § 1166. Accordingly, MSI is entitled to summary judgment on Cooper's COBRA claim.

### C. Oklahoma's Protection of Labor Act

MSI requests summary judgment on Cooper's claims that MSI violated Oklahoma's Protection of Labor Act ("OPLA"), which requires that, upon termination of employment, employers pay all wages "earned and due," including bonuses. [*See* Dkt. #32, pp. 15-17]; Okla. Stat. tit. 40, §§ 165.1 *et seq.* The parties agree that the production incentive bonus would have constituted wages "earned and due" to Cooper had he been employed as of the date the bonus was paid. [*See* Dkt. 32, p. 16; Dkt. 42, p. 16]. However, the parties disagree about certain facts relevant to whether Cooper was employed at the time the production incentive bonus was paid.

First, factual issues exist as to when the production incentive bonus was paid. As noted above, at the hearing on defendants' Motion for Summary Judgment, counsel for MSI clarified that MSI cut the checks for the production incentive bonus, including a check for Cooper, on Friday, July 13, 2012. The checks were transferred to MSI's facility at the Port of Catoosa, where, MSI claims, they were reviewed to determine whether the intended recipients were still employed before the checks were subsequently distributed. The record does not reveal when the checks were received at the Port, when they received final approval, and when they were distributed. On July 26th Westmoreland told Cooper that the checks had been distributed to the rest of the crew. [Dkt. #42, Ex. A, p. 1].

Factual issues also exist as to the timing and nature of Cooper's termination. The Employee Action Sheet completed by Westmoreland on July 24, 2012 states that Cooper resigned on Monday, July 16, 2012. However, viewing the evidence in the light most favorable to Cooper, he was terminated, and the termination occurred sometime after July 16th. Cooper and Westmoreland's separate accounts of their conversation on the 16th, described above, leave ample room to doubt that Cooper resigned or that Westmoreland fired Cooper during that conversation. On the 19th, after Cooper's motorcycle accident, Westmoreland may have advised Cooper on how to apply for short-term disability benefits, suggesting that Westmoreland considered Cooper a current employee. Cooper claims he did not learn he had been terminated until another conversation with Westmoreland on or after July 26th.

The assessment of whether and when the production incentive bonus was paid, and of the nature and timing of Cooper's separation from MSI, is a factual inquiry appropriate for a jury. Accordingly, MSI is not entitled to summary judgment on Cooper's OPLA claim as it relates to the production incentive bonus.

Cooper also claims that his termination by MSI deprived him of health and disability insurance and benefits. Cooper does not argue that these benefits constitute "wages" under Okla. Stat., tit. 40 § 165.1(4) (defining "wages" to include "salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages"). Instead, Cooper relies on a separate provision of the OPLA, § 165.11, which reads as follows:

> [A]ny employer who [agrees or has a contractual obligation] to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees and who willfully fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty (30) days after such payments are required to be made by law or by agreement, shall be guilty of a misdemeanor . . . .

Paragraph B of the same provision defines "benefits or wage supplements" as "health, welfare and retirement benefits" among other things. Cooper argues that this provision—when combined with § 165.7(G)'s creation of a private right of action for violations of §§ 165.1 through 165.11—allows Cooper to seek individual insurance and short term disability benefits he claims to have earned while employed at MSI.

This court concludes Cooper's interpretation of § 165.11 is incorrect. That provision, along with its definitions, creates and defines a criminal misdemeanor offense for failure to fund benefits programs. Cooper has not alleged that MSI failed to fund its benefits programs, nor does the evidence in the record support such a finding. The court rejects Cooper's interpretation of § 165.11, which would extend OPLA's "wages" protections to benefits *not listed* in the definition of "wages" in § 165.1(4). MSI is entitled to summary judgment on the insurance and benefits portions of Cooper's OPLA claim.

### D. *Burk* Tort

MSI also requests summary judgment on Cooper's *Burk* tort claim. Oklahoma law recognizes an exception to the terminable-at-will employment doctrine applicable to employment

14

of indefinite duration.  *See Reynolds v. Advance Alarms, Inc.*, 232 P.3d 907, 909 (Okla. 2009); *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989).  The exception applies when an employee is discharged contrary to a clear mandate of public policy as articulated by Oklahoma constitutional, statutory, or decisional law.  *See Burk*, 770 P.2d at 28.  The public policy at issue must be "tightly circumscribed." *See id*. at 28-29.

As discussed in the previous section, Cooper claims MSI terminated him and did not pay him the production incentive bonus, in violation of Oklahoma's Protection of Labor Act ("OPLA").  Cooper argues that OPLA establishes a clearly articulated public policy of paying a worker for the hours he works.  [*See* Dkt. #42, p. 17, citing *Glasco v. Advanced Dental Implant & Denture Ctr.*, 2013 WL 1337297, at *2 (W.D. Okla. March 28, 2013)].  MSI argues that Cooper's invocation of OPLA does not articulate a public policy that can support a *Burk* claim.

Oklahoma courts have not addressed directly whether OPLA's protection of bonuses clearly articulates a public policy for *Burk* purposes.  That question seems to fit in the space between two lines of cases.  On one hand, courts have held consistently that OPLA's protections for "overtime pay" do not articulate a public policy supporting a *Burk* claim.  *See McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1488 (10th Cir. 1996) (cited with approval by the Oklahoma Supreme Court in *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1211 & n. 32 (Okla. 2008)); *Winters v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 2014 WL 2864169, at *6 (E.D.Okla. June 24, 2014).  On the other hand, the Oklahoma Supreme Court in *Reynolds* stated that OPLA "clearly articulates a compelling public policy requiring an employer . . . to pay an employee . . . his or her earnings on designated paydays at least semimonthly." *Reynolds*, 232 P.3d at 910; *see also Glasco*, 2014 WL 1337297, at *2 (finding that "Oklahoma has a clearly established public policy requiring an employer to pay an employee for all hours worked.").

This court concludes that OPLA's protection of bonuses is more like its protection of overtime pay than its protection of regular wages. The cases rejecting a *Burk*-style public policy for overtime based on OPLA have reasoned that OPLA merely mentions "overtime pay," and neither OPLA nor Oklahoma law more generally contains any "standards, guidelines or regulations with regard to overtime compensation," including any statutory authority "regarding the calculation of overtime and maximum working hours." *See McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1488 (10th Cir. 1996) ("we believe § 165.1(4)'s passing reference to "overtime pay" is far too slender a reed upon which to base a public policy tort."); *Winters v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 2014 WL 2864169, at *6 (E.D.Okla. June 24, 2014) (OPLA "cannot articulate a policy regarding the protection of reporting overtime complaints if it does not contain any overtime policy or requirements.").

These considerations apply *a fortiori* to bonuses. Like "overtime pay," the defining term "bonuses" is listed in OPLA's definition of "wages," § 165.1(4), but OPLA provides no additional detail with regard to either. As with overtime, Oklahoma law does not provide authority requiring bonuses for private employees under certain circumstances, nor does it provide criteria for the calculation of bonuses. Bonuses, even more than overtime pay, are given by employers subject to their own considerations and qualifications. Accordingly, the court concludes that OPLA's protection of bonuses does not establish a clearly articulated compelling public policy sufficient to support a *Burk* claim.[6]

---

[6] Because the court does not recognize a compelling public policy for the payment of bonuses based on OPLA, the court need not address whether OPLA would provide an adequate remedy to protect such a public policy. *See Reynolds*, 232 P.3d at 909 (to establish a *Burk tort*, the plaintiff must show, *inter alia*, that there is no other adequate remedy to protect the identified public policy).

Because Cooper has failed, as a matter of law, to articulate a clearly established public policy violated by his termination, the court concludes MSI is entitled to summary judgment on Cooper's *Burk* tort claim.

### E. Breach of Contract

Finally, MSI requests summary judgment on Cooper's breach of contract claim. In his original Petition, Cooper alleged that MSI breached "employment agreements" with Cooper by firing him, by not paying him the production incentive bonus from the Superior job, and by not providing unspecified "benefits." [*See* Dkt. #2. Ex. 1 at ¶16]. MSI requests summary judgment on this claim because, MSI argues, Cooper's employment with MSI was at will and because Cooper fails to identify specific promises that could serve as the substance of any alleged employment agreement. [*See* Dkt. #32, p. 17].

Normally, the question of the existence of a contract is a question of fact, but if the alleged contract contains only "vague assurances," the question of the contract's existence can be resolved as a matter of law. *See Vice v. Conoco, Inc.*, 150 F.3d 1286, 1289 (10th Cir. 1998).

Cooper has not alleged that he had any express employment contract with MSI, instead alleging unnamed and unspecified "employment agreements," presumably implied contracts. Cooper clarifies his theory somewhat when he contends that his contract with MSI arises from the provision titled "Payment of Bonuses" in the Payroll Administration Policy contained in the Employee Handbook. [*See* Dkt. #42, p. 18]. Cooper does not identify any other purported employment agreements violated by MSI firing him or not providing the unspecified benefits mentioned in his initial Petition.

Employee handbooks and policies may form the basis of implied contracts between employer and employee when certain criteria are met. *See Russell v. Bd. of Cnty. Comm'rs,*

17

*Carter Cnty.*, 952 P.2d 492, 501-02 (Okla. 1997) (handbooks may be the basis for an implied contract when four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object, and (4) consideration). However, the promises made in the manual must be in definite terms, not in the form of vague assurances. *See id.* at 502 ("[I]n order to create an implied contract the promises must be definite.") (omitting internal citations).

Employers may disclaim that the handbook or policy creates any additional agreement between the employer and employee. *See Bowen v. Income Producing Mgmt. of Okla.*, 202 F.3d 1282, 1285 (10th Cir. 2000). Such a disclaimer is effective so long as the disclaimer is clear and the employer's conduct does not negate the disclaimer's effect. *See id.*

MSI's Handbook clearly disclaims the creation of any contract between employer and employee: "Nothing in this Handbook . . . constitutes an expressed or implied contract of employment to which the Company or the individual employee is bound." [Dkt. #32, Ex. E at 2]. Cooper does not allege any facts that suggest that MSI, through its subsequent conduct, undermined the disclaimer. Specifically, Cooper does not allege that an MSI representative told him or suggested that the Handbook, or any part thereof, was a binding agreement, contrary to the disclaimer.

Furthermore, Cooper points to a policy provision that contains no promises at all, at least no promises beneficial to an MSI employee. The Payroll Administration Policy is simply a threshold requirement for an employee "[t]o be considered" for a bonus, not a set of criteria guaranteeing a bonus.

The evidentiary materials submitted by the parties do not support the existence of a contract that could have been violated by MSI firing Cooper, by not paying him the production

incentive bonus, or by withholding other employment benefits. Accordingly, MSI is entitled to summary judgment on Cooper's breach of contract claim.

## IV. Conclusion

Cooper's claims against defendant Matrix Services Company are hereby dismissed by agreement of the parties.

The motion for summary judgment [Dkt. #32] is hereby GRANTED IN PART as to the following claims against Matrix Service, Inc.: Cooper's COBRA claim, the portion of Cooper's OPLA claim based on insurance and benefits other than the production incentive bonus, Cooper's *Burk* tort claim, and Cooper's breach of contract claim. The motion is DENIED IN PART as to Cooper's FMLA claims against MSI and the portion of Cooper's OPLA claim against MSI based on the production incentive bonus.

DATED this 19th day of December, 2014.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT